# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

**AARON ABADI,**

   Appellant,

v.             **Case No. 22-1560**

**CITY OF NEW YORK,**

   Appellee.

On Appeal from:

District Court Case # 1:21-cv-08071-PAE-JLC

In the UNITED STATES DISTRICT COURT

of the SOUTHERN DISTRICT OF NEW YORK

## <u>APPELLANT'S BRIEF</u>

AARON ABADI, Appellant
82 Nassau Street Apt 140
New York, NY 10038
Tel 516-639-4100
Email: aa@neg.com

# TABLE OF CONTENTS                    Page

I.    Table of Authorities……………………………………………4

II.   Jurisdiction……………………………………………………6

III.  Procedural History…………………………………………..7

IV.   Statement of the Issues……………………………………..11

V.    Statement of the Facts………………………………………15

VI.   Summary of the Arguments…………………………………25

VII.  Arguments…………………………………………………..29

   A. Introduction to the Arguments…………………………………29

   B. Why the "to protect the public health" justification fails………...33

   C. Mandates Need to be Tailored Specifically………………………35

   D. Vaccines Allowed Are Any Vaccines Approved By the FDA or the
      WHO……………………………………………………………36

   E. CDC says Covid Reinfection is Rare, and CDC also says Vaccine
      Breakthrough infections are COMMON………………………….37

   F. We Never Gave Vaccines to Those With Natural Immunity…….38

   G. The CITY's Motivation is Political, Not Based on Health……….40

   H. Natural Immunity was always considered better than vaccine
      immunity……………………………………………………………43

I.   False Imprisonment……………………………………………45

J.   THE MRNA Shots are not Vaccines…………..…………………49

K.  The Government Cannot Force Medical Decisions & Procedures..52

L.  Forcing Drugs that are only approved for Emergency Usage……..54

M. The Absurdity of Saying the Mandates don't Force the Vaccines…54

N.  AS PER NEW YORK STATE LAW, THE NYC VACCINE MANDATES ARE ILLEGAL …………………………………………………55

O.  THE NYC VACCINE MANDATES ARE ARBITRARY AND CAPRICIOUS…………………………………………………..62

P.  The VACCINE WAS MOSTLY A LIE TO BEGIN WITH………64

Q.  The Caselaw from the Court Order is missing Context and not Referring to the Same Scenario……………………………………………67

VIII.   Conclusion……………………………………………………69

IX.   Certificate of Compliance………………………………………70

X.   Certificate of Service……………………………………………70

# I.  TABLE OF AUTHORITIES

## A. CASES                                                                Pages

Anthony Marciano v. Eric Adams, Mayor of the City of
New York, et al. Supreme Court case # 22A178,
on appeal from Second Circuit Case # 22-570……………….…10

Boreali v. Axelrod, 71 N.Y.2d 1, 14-15 (N.Y. 1987)…………………..56,60

Bravman v. Baxter Healthcare Corp., 842 F. Supp. (S.D.N.Y. 1994)…..60

BST Holdings, L.L.C. v. OSHA, 17 F.4th 604, No. 21-60845, 2021…..62,63

CITY OF CHICAGO v. MORALES et al. U.S. Supreme Court (1999)…49

Consolidated Edison Co. v Town of Red Hook, 60 N.Y.2d 99………..56,59

Cruzan v. Director, Mo. Dept. of Health, 497 U.S. 261, 269 (1990)…….53

Dagi v. Delta Airlines, Inc., 961 F.3d 22, 29 (1st Cir. 2020)…………45,46

Garcia v. N.Y.C. Dep't of Health & Mental Hygiene, 31 N.Y.3d 601
(2018)………………………………………………………………56,57,58,59,61

Jacobson v. Massachusetts, 197 U.S. 11, 27 (1905)…………………30,32,33

John Doe #1 v. Rumsfeld, 297 F.Supp.2d 119 (D.D.C.2003)…………..61

Landell v. Sorrell, 382 F.3d 91, 110 (2d Cir. 2004)……………………..35

Lukaszczyk v. Cook Cnty., 47 F.4th 587 (7th Cir. 2022)………………51

Monroe-Livingston Sanitary Landfill v Town of Caledonia, 51 N.Y.2d
679)………………………………………………………………56

New York State Club Assn. v City of New York, 69 N.Y.2d 211……..56,59

Pennsylvania v. Nelson, 350 U.S. 497 (1956)…………………………..60

People v. De Jesus, 54 N.Y.2d 465, 469 (N.Y. 1981)…………………..60

Randall v. Sorrell, 548 U.S. 230, 126 S. Ct. (2006)……………………..35

Reno v. Flores, 507 U.S. Supr. Ct. 292, 301-02 (1993)…………………12

Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)…………….61

Shen v. Leo A. Daly Co., 222 F.3d 472, 478 (8th Cir. 2000)…………46,47

Tanzin v. Tanvir, 141 S.Ct. 486 (U.S., 2020)……………………………28

United States v. Playboy Ent. Grp., Inc., U.S. Supreme Court (2000)….35

Vatore v. Consumer Affairs, 83 N.Y.2d 645, 649 (N.Y. 1994)…………59

Ward v. Rock Against Racism, 491 U.S. S. Ct. (1989)…………………35

Washington v. Glucksberg, 521 U.S. 702, 720, 117 S.Ct. 2258 (1997)….53

Washington v. Harper, 494 U.S. Supr. Ct. 210, 229 (1990)……………..12

## B. <u>STATUTES AND OTHER AUTHORITIES</u>                Page

28 U.S.C. § 1331…………………………………………………………6

28 U.S.C. §§ 2201, 2202…………………………………………………6

28 U.S.C. § 1391(b)(2)…………………………………………………..6

28 U.S. Code § 1295 (a)…………………………………………………6

FRAP Rule 4 (a)1(A)…………………………………………………….7

21 U.S.C. § 360bbb-3………………………………………….13,16.54

Fifth Amendment to the U.S. Constitution………………………………...12

Ninth Amendment to the U.S. Constitution………………………………12

Fourteenth Amendment to the U.S. Constitution………………………..6,12

New York Penal Law §135………………………………………………..48

NY Public Health Law - PBH § 2120…………………………………..55,63

RULES OF THE CITY OF NEW YORK. 24 RCNY §11.23……….55,58,63

New York PHL §206(1)(l)………………………………………….56,58,61

NYS PHL §613 (c)…………………………………………………….56,57

PHL §2180–§2182, Novel Coronavirus Covid 19 Legislation…………….58

## II.     <u>JURISDICTION</u>

1)      The District Court has jurisdiction over this case under 28 U.S.C. § 1331: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." My claims against the Defendant arise under federal law, specifically the fourteenth amendment of the U.S. Constitution and other federal claims.

2)      The District Court has the authority to grant declaratory and compensatory relief, and to vacate the NYC Vaccine Mandates under the Declaratory Judgment Act, and the Court's inherent equitable powers. 28 U.S.C. §§ 2201, 2202.

3)      Venue is proper in this judicial district, the Southern District of New York, because the events giving rise to this lawsuit occurred in Manhattan, New York City, the Plaintiff and the Defendant are both located in Manhattan. "A civil action may be brought in … a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred …" 28 U.S.C. § 1391(b)(2).

4)      This Court has the jurisdiction to address this appeal as 28 U.S. Code § 1295 (a) states; "The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction…(2) of an appeal from a final decision of a district court of the United States…"

5)      The District Court entered the final order (Addendum – Case Docs. 34 & 35) on July 15, 2022, and the notice of appeal was filed on July 18, 2022, well within the 30 days as required by FRAP Rule 4 (a)1(A).

6)      This appeal is from this final order by the District Court, granting the motion to dismiss of the Defendant and closing the case.

7)      The Plaintiff/Appellant has standing in this case as his income and living conditions have been directly affected by these NYC vaccine mandates to a most devastating effect.

## III.      **PROCEDURAL HISTORY**

1)      This case in the district court was a complaint against the City of New York by a resident of that City, Aaron Abadi, questioning the constitutionality, legality, and validity of the forced vaccine mandates, and asking for relief.  These mandates were instated by the Mayor and his Department of Health, and were not voted on and approved by the legislature.

2)      The original complaint was filed in the district court on September 28, 2021, (Doc. 2), together with a motion for preliminary injunction to stay the NYC vaccine mandates (Doc. 3).

3)      On September 30, 2021, the case was assigned to Judge Paul A. Engelmayer.

4)     The court granted a motion for in-forma pauperis and ordered the U.S. Marshals to effect service.

5)     On December 27, 2021, Defendant filed a motion to dismiss (Docs. 17-19).

6)     The court ordered on December 28, 2021 for the Plaintiff to have 21 days to amend the complaint and/or file a response to the motion to dismiss (Doc. 20).

7)     On December 28, 2021, Plaintiff filed a response to the motion to dismiss (Doc. 21), and on January 12, 2022 Plaintiff filed an amended complaint (Doc. 22).

8)     On February 4, 2022, Judge Engelmayer denied the motion for preliminary injunction (Doc. 24).

9)     On February 7, 2022 Defendant resubmitted their motion to dismiss, presumably on the amended complaint (Docs. 25-27).

10)     On February 7, 2022, Plaintiff filed a notice of appeal to this court on the final order denying emergency relief (Doc. 28).

11)     On July 14, 2022, this court denied Plaintiff's appeal in 2nd Circuit Case # 22-268, (District Ct. Doc. 33).

12)     On July 18, 2022, Judge Engelmayer dismissed the case completely (Docs. 34 & 35).

13)     On the same day, Plaintiff filed a Notice of Appeal to open this case and appeal the final decision/order of the court Doc. 36).

14)     In its order to dismiss, the court wrote the following explanation, "On July 14, 2022, the Circuit's mandate issued, denying Abadi's motions and summarily dismissing his appeal for "lack[ing] an arguable basis either in law or in fact." Dkt. 33 (quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989)). For substantially the same reasons reviewed in the Court's opinion denying Abadi's motion for a preliminary injunction, see Dkt. 24, the Court grants the City's motion to dismiss Abadi's claims, with prejudice. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)."

15)     Both dismissals are a bit confusing to this unlearned Plaintiff.  The Circuit Court never explained the reason to dismiss the case, other than to say it was "lack[ing] an arguable basis either in law or in fact." No details and no explanation why.

16)     The District Court dismissed the complaint quoting for the same reasons of the dismissal of the motion for preliminary injunction, but those motions are held to much stricter standards than a complaint. It is possible that the judge meant some of the reasons for the dismissal of the motion were the reasons for the dismissal of the complaint, but never specified or explained anything.

17)     I find myself having to prepare a rebuttal here in this brief to any and all arguments presented, as no one wants to tell me which arguments if any, caused the cases to be dismissed.

18)     It seems that the courts have been reluctant to protect anyone fighting against government overreach with vaccine mandates.  Finally, the Supreme Court intervened on one famous case discussed below against OSHA. The lower courts seem to not be interested in even reviewing the evidence, and/or discussing the issue. They're just throwing it out with motions to dismiss, and not allowing anyone to litigate. I believe that many of us have some very cogent arguments, but it feels like no one is interested in even listening.

19)     It is refreshing to hear that today, October 7, 2022, as I write this, the Supreme Court had a conference to determine if The NYC vaccine mandates are legally valid, on an application for an emergent motion by a police officer in the case of Anthony Marciano v. Eric Adams, Mayor of the City of New York, et al. Supreme Court case # 22A178, on appeal from Second Circuit Case # 22-570.

20)     No matter what the outcome in that particular case, the point is that the Justices of Supreme Court accepted that case, even though we all know that they do not accept many cases, and usually just deny it and send it back.

21)     Obviously, the Supreme Court were not so sure that the premise is stupid and/or frivolous, and they're even considering granting a motion to stay the

NYC vaccine mandates, or some of them. Yet, when I brought this case, it has been floating in the district court and the circuit court for over a year, and the best I'm told is that it was "lack[ing] an arguable basis either in law or in fact," or go look at that other order that is not the same situation and we are dismissing it for the same reasons. Pretty much telling me that I am an idiot and get lost. We pro se litigants face a tough time in the court system; you have no idea how tough it is.

22)    I, therefore, bring this case to this court, with hopes of an opportunity for my constitutionally guaranteed due process. I beg of this court, if the court wants to throw this case out, please afford me the dignity of explaining in near simple terms why.

## IV.    <u>STATEMENT OF THE ISSUES</u>

1)    Plaintiff filed an amended complaint asking the District Court to permanently enjoin the enforcement of the New York City ("NYC") vaccine mandates, and declare that they are unlawful, and must be stopped immediately.

2)    The City of New York ("the CITY"), the Defendant, signed three executive orders (the "NYC vaccine mandates") limiting Plaintiff and all people from working in NYC, and going into indoor public places without getting vaccinated.

3)    Plaintiff claims that these mandates violate his rights due to the following:

a.      The NYC Vaccine Mandates require Plaintiff to take a vaccine
without his consent—and against the medical advice of experts—thereby depriving
him of his ability to refuse unwanted medical care. The Supreme Court has
recognized that the Fifth, Ninth and Fourteenth Amendments protect an
individual's right to privacy. A "forcible injection … into a nonconsenting
person's body represents a substantial interference with that person's liberty[.]"
Washington v. Harper, 494 U.S. Supr. Ct. 210, 229 (1990).

b.      Violates my rights in the U.S. CONSTITUTION amend. XIV § 1, as
it "forbids the government to infringe certain fundamental liberty interests at all, no
matter what process is provided, unless the infringement is narrowly tailored to
serve a compelling state interest." Reno v. Flores, 507 U.S. Supr. Ct. 292, 301-02
(1993).

c.      It violates the equal protection component of the due process clause of
the fourteenth amendment to the Constitution. Plaintiff is the same or more
immune to the Covid disease as a vaccinated individual, yet the vaccinated
individual can go to all these places and take any job, while Plaintiff is severely
limited by these Orders.

d.      Plaintiff claims, as he believes that this should be considered false
imprisonment. Imprisonment is not only when the person is physically contained.
In this case, I am allowed to leave my house, but cannot go into most indoor public

places and I cannot get a job or even work for my self in my own business in a private office or in my home.

  e.  Violates federal statutory laws of medical products with Emergency Use Authorization ("EUA"), where people must have the "option to accept or refuse administration of the product…" 21 U.S.C. § 360bbb-3.

  f.  Additionally, and/or specifically, Plaintiff asked the Court to find that theses vaccine mandates are <u>ARBITRARY AND CAPRICIOUS</u> with respect to Plaintiff who already had Covid and therefore has natural immunity.

  4)  The Center for Disease Control ("CDC") states on its website (Complaint doc 2 Exhibit C page 23 of 131) that "Cases of reinfection with COVID-19 have been reported, but remain rare." The same has been proven by multiple studies, some provided with the complaints.

  5)  The NYC vaccine mandates will accept any vaccine approved by the World Health Organization ("WHO"), even though the WHO's criteria to approve vaccines is that there is an efficacy rate of 50% or above (Amended Complaint doc 22 pages 24-25 of 309), while natural immunity is not recognized at all.  Someone with natural immunity is still required to take a vaccine, or suffer all the punishments described in the NYC vaccine mandates.  Yet, evidence all show that natural immunity is much better than 50% efficacy, to the point where the CDC

says reinfection is rare. You cannot reconcile the CDC saying it is rare, but permitting vaccines with only a 50% efficacy rate.

6)      Plaintiff claims that that is arbitrary and capricious. While the City is entitled to create laws to protect the health of its people.  It is not entitled to create laws that are arbitrary and capricious.

7)      What can be more arbitrary and capricious, than a person with a 50% vaccine efficacy rate allowed to do anything and everything and go anywhere and everywhere, while a person with natural immunity with a much higher efficacy rate, to a point where reinfection is determined by the CDC as rare, yet he cannot go to most indoor public places and cannot work anywhere in the city, even alone in his own house.

8)      While the CITY tried to say that the case is now moot, because much of the NYC vaccine mandates restrictions have since been lifted, specifically with regards to indoor public places, there are still some very severe restrictions still in effect.  Plaintiff cannot work in NYC even for himself.  A one-person business is still restricted.  Plaintiff cannot either get a job anywhere in NYC based on these NYC vaccine mandates.

9)      Besides, there is no indication that these restrictions will NOT go back into effect if there is a recurrence of Covid in a new strain or another disease, like

monkeypox, or whatever comes next.  Once a municipality takes more power, it is very seldom that they will let it go.

10)     The District Court dismissed the amended complaint without explaining, other than to say. "For substantially the same reasons reviewed in the Court's opinion denying Abadi's motion for a preliminary injunction, see Dkts. 24 the Court grants the City's motion to dismiss Abadi's claims, with prejudice."

11)     The decision is based on claims in other cases in other courts that are not necessarily the same as this case. None of those cases, that I am aware of, address natural immunity to any real level.

12)     Appellant/Plaintiff asks this Court to review the lower court's decision, and to reverse it.


## V.     STATEMENT OF THE FACTS


1)     By the spring of 2020, the novel coronavirus SARS-CoV-2, which can cause the disease COVID-19, had spread across the globe.  Since then, three separate coronavirus vaccines have been developed. The FDA issued an Emergency Use Authorization ("EUA") for the PfizerBioNTech COVID-19 Vaccine ("BioNTech Vaccine") on December 11, 2020.  A week later, FDA issued a second EUA for the Moderna COVID-19 Vaccine. The FDA issued an EUA for

the Johnson & Johnson COVID-19 Vaccine ("Janssen Vaccine") on February 27, 2021.

2)      FDA fully approved the Pfizer Comirnaty Vaccine ("Comirnaty Vaccine") on August 23, 2021.  Though both are affiliated with Pfizer, the BioNTech Vaccine and the Comirnaty Vaccine are legally distinguishable and on information and belief, the BioNTech and Comirnaty Vaccines are also factually distinguishable.

3)      The EUA statute, 21 U.S.C. § 360bbb-3(e)(1)(A)(ii), explicitly states that recipients of products approved for use under it must be informed of the "option to accept or refuse administration," and of the "significant known and potential benefits and risks of such use, and of the extent to which such benefits and risks are unknown."

4)      On August 16, 2021 the Mayor of the City of New York issued an Emergency Executive Order # 225, (Amended complaint - doc 22 - Exhibit A - page 72 of 309) relying on the CDC and  "requiring COVID-19 Vaccination for Indoor Entertainment, recreation, Dining and Fitness Settings." The order states "that a covered entity shall not permit a patron, full- or part-time employee, intern, volunteer, or contractor to enter a covered premises without displaying proof of vaccination and identification bearing the same identifying information as the proof of vaccination."

5)       Additionally, on August 31, 2021, the Mayor of the City of New York issued an Executive Order # 78, (Amended complaint - doc 22 - Exhibit B - page 77 of 309) relying on the CDC and requiring "Mandatory Vaccination or Test Requirement for City Employees and Covered Employees of City Contractors." This Order requires all City employees and employees of City contractors to either show proof of vaccination, or proof of Covid negative tests each week.

6)       These Executive Orders ("NYC Vaccine Mandates") require even those recovered from Covid, who have natural immunity, to take the vaccine. Otherwise, they will not be allowed into all these places, and cannot work for the City, or for Contractors to the City.

7)       As of December 27, 2021, the newest order by Dr. Dave A. Chokshi, who is the commissioner of the New York City Department of Health and Mental Hygiene, dated Dec 13, 2021 (Amended complaint - doc 22 - Exhibit C - page 80 of 309) went into effect requiring all employers to exclude any employee who was not vaccinated.

8)       Covered entity is defined as, "a non-governmental entity that employs more than one worker in New York City or maintains a workplace in New York City…"  Between the three NYC Vaccine Mandates, the requirement for having a vaccine lays on pretty much on every employer in the city, and on all those tens of thousands of restaurants and public venues listed in the order.

9)      While some of the restrictions have been lifted, the most urgent aspect of employment without a vaccine has not been lifted.  The link from the City of New York website is still there. https://www1.nyc.gov/site/doh/covid/covid-19-vaccine-workplace-requirement.page#:~:text=Non%2Demployee%20workers%2C%20such%20as,and%20the%20confirmations%20they%20receive.

10)     It states that "Businesses must verify each worker's proof of vaccination." The rules are still in effect. This Applicant cannot yet work even for his own business without being vaccinated. There is talk of possibly removing it in November, though. Who knows.

11)     The lack of a natural immunity exception, raises serious questions about whether the NYC Vaccine Mandates are designed to accomplish a legitimate purpose.  The paucity of exceptions on legitimate bases indicates that the NYC Vaccine Mandates are, at the very least, arbitrary and capricious in addition to being overbroad and poorly designed.

12)     Also highlighting the arbitrary nature of the Mandates is the fact that compliance with the NYC Vaccine Mandates can be achieved by receiving any vaccine that has been listed for emergency use by the World Health Organization ("WHO"). The WHO's requirement for a vaccine to be approved is only a 50% efficacy rate.

13)     Thus, the NYC Vaccine Mandates can be satisfied by taking inferior foreign vaccines that the FDA has not approved in any fashion, such as the Sinovac and Sinopharm Vaccines.  No credible study has found that these foreign vaccines provide better or even equivalent protection than naturally acquired immunity.

14)     Those who do not comply with the NYC Vaccine Mandates by the aggressive deadlines that already passed, face potential disciplinary action, including termination of employment, and inability to get employment.

15)     Those who enter public places, violating the order, or those entities found violating the order, will be liable for fines ranging from $1,000 per incident and reaching "not less than $5,000," per incident.

16)     Applicant has already contracted and fully recovered from COVID-19, as evidenced in the letter from his doctor (Amended Complaint doc 22 – Exhibit D – page 85 of 309). As a result, he possesses naturally acquired immunity. It is medically unnecessary for him to get vaccinated.

17)     Yet, if Applicant elects not to take the vaccines, he has been facing and will continue to face adverse disciplinary consequences.  In short, the NYC Vaccine Mandates are unmistakably coercive and cannot reasonably be considered anything other than an unlawful order.

18)     Applicant is unemployed and his unemployment payments ceased in September 2021 (Amended Complaint doc 22 – Exhibit E – page 86 of 309).

19)     Applicant cannot even apply for a job without being vaccinated. Applicant was interested in an available job with the City of New York's Department of Sanitation, as a contract manager, which has been this Applicant's line of work for about thirty years. Applicant attempted to apply for that job, but was not permitted to even apply for this job as he is not vaccinated.  Any attempt Applicant made to get a job was futile, as the first question asked is "are you vaccinated."

20)     Applicant has been in the waste management business for decades and currently has a business opportunity to develop a waste management project in Bangalore, India. Unfortunately, since Applicant is unvaccinated for Covid, he cannot legally become an employee of the company he already formed, being that he lives in and the company is based in New York City, so long as these unlawful mandates remain in effect.

21)     There is a contract already signed between the BBMP, the municipality of the City of Bangalore, India, and National Environmental Group, LLC ("NEG"), a company formed by this applicant to develop this project. This contract is confidential, which can be shared confidentially if needed.

22)     NEG is fully owned by the Applicant. This agreement, and the project it is referring to, already has funding commitments (confidential evidence is available).  It is expected to be started immediately, as per the agreement.

23)     <u>Applicant cannot become an employee of his own corporation without</u> <u>getting vaccinated according to the City of New York.</u>

24)     Naturally acquired immunity is at least as robust and durable as that attained through the most effective vaccines, and it is significantly more protective and long-lasting than some of the inferior foreign vaccines that the NYC Vaccine Mandates accept.

25)     Even beyond its constitutional defects, the unlawful NYC Vaccine Mandates are irreconcilable with and frustrates the objectives of the federal statute governing administration of medical products authorized for emergency use only. That statute is the law of the land, and it trumps mere Executive Orders from the States.

26)     Accepting employment should not mean serving as a guinea pig for emergency use authorized drugs. Forcing Applicant and others to take this vaccine will provide no discernible, let alone compelling, benefit either to Applicant or to the Respondent.

27)     While some of those restrictions have been reduced somewhat, the overall employment restrictions and limitations still exist.

28)     The unconstitutional conditions doctrine exists precisely to prevent government actors from clothing unconstitutional objectives and policies in the garb of supposed voluntarism when those actors fully intend and expect that the

pressure they exert will lead to the targets of such disguised regulation succumbing to the government's will.

29)     The CDC says on their website that "COVID REINFECTION REMAINS RARE."

30)     On the other hand, the CDC says on their website that "VACCINE BREAKTHROUGH INFECTION ARE EXPECTED." (Amended Complaint doc 22 – Exhibit O – page 180 of 309) It would seem from their own statements that they too agree that natural immunity is stronger than vaccines.

31)     Applicant states that he is not opposed to vaccinations in general. He advised all four of his children to get the Covid vaccines and he himself is fully vaccinated with all vaccines recommended by his physicians throughout the years.

32)     Applicant states that upon speaking to his doctor, he was told that since he already had Covid and thus has natural immunity, he does not need to get the vaccine.

33)     The Vaccine Adverse Event Reporting System "VAERS," a division of the United States Department of Health and Human Services ("HHS"), tracks adverse events for all vaccines, and has received extensive reports of various adverse events caused by the Covid 19 vaccines. There have been more adverse reactions to these vaccines than the total of all adverse reactions to all other

vaccines since 1990. This is readily available on their website at

https://vaers.hhs.gov

34)    There has been an international discussion as to which is a better

protection against Covid, natural immunity or a vaccine. The CDC continues to

recommend vaccines to those who recovered from Covid, based on a study from

Kentucky with only 492 participants (Amended Complaint doc 22 – Exhibit M –

page 175 of 309). The study suggests that a person with natural immunity is twice

as likely to get Covid again than a person who is fully vaccinated.  In either case

the amount is relatively small.

35)    There's a study from Israel (Amended Complaint doc 22 – Exhibit L –

page 143 of 309) that processed a data sample equal to 26% of the country, which

would equal over two million people, and this study shows that natural immunity is

many times more protective, and for much longer than the vaccines. Clearly, the

study with the much larger data sample should be more accurate.  It is hard for the

Applicant to believe that the CDC relied on such a miniscule data sample, in lieu

and in opposition to studies with larger data.

36)    More recent CDC and Johns Hopkins studies show that natural

immunity is substantially more protective than vaccine immunity.

37)    Applicant chooses not to get vaccinated, as Applicant recognizes that

there are adverse events and side effects related to receiving the vaccine. Being that

there isn't adequate evidence that the vaccine will help the Applicant in any way, Applicant feels there is no reason for him to take the risks related to the vaccine, even if they are minimal, or limited.

38)     With regard to his own children, Applicant made a mathematical decision, weighing the risks associated with possibly getting Covid, versus the risks associated from adverse effects from the vaccine. All four of his children are fully vaccinated. At the time, none had previously been sick with the virus. American citizens are entitled to make their own medical decisions, as opposed to in other countries from which our ancestors escaped from.

39)     On January 5, 2022, this Applicant filed an application for a Stay against Occupational Safety & Health Administration ("OSHA") with the Supreme Court of the United States (Case # 21A293).

40)     Upon the court's review of the filings and upon oral argument with two of the open cases on behalf of the others, the Court determined that we were all in the right and granted the Stay against OSHA from implementing its vaccine mandate.

41)     There are clear differences between that case and this one, as that was the federal government overstepping its authority, and technically a state has more authority within its boundaries to implement safety related laws.

42)     If the Court is not prepared to determine that the entire mandate is

unlawful, then at least the Court should declare that the <u>forcing of the mandate to</u>

<u>get vaccinated onto people who already have equal or better natural immunity is</u>

<u>arbitrary and capricious and should be unlawful.</u>

## VI.     <u>SUMMARY OF THE ARGUMENTS</u>

1)     Covid-19 was the scariest mass disease/sickness in my lifetime. The

Defendant spends much time and effort proving that it is scary and therefore the

CITY is entitled, nay required to take these serious steps to save mankind. This is

the duty of the CITY and their responsibility to the people.

2)     It is unnecessary for the Defendant to spend pages focusing on how

scary Covid is. We all lived through the past two years together. Yes, we all know

that the CDC and Dr. Fauci have walked back a lot of their decisions and probably

there was a lot more fear drummed up than was warranted. However, the CITY

still needs to make public health decisions based on the facts available at the time.

I get all that.  As I said earlier, I am not an idiot.

3)     What I do want to present is the idea that at a time of fear and intense

emotions, the CITY and the court system are expected and required to maintain

their rational thought process.  During World War II, we made some horrible

decisions based on emotions, that we all regret to this day.  One example is, the

internment of Japanese Americans who were full-fledged American citizens. We have learned from those mistakes and we no longer lose control of our rational thinking.

4)      When a pandemic hits a city, the job of the government of that city is to sit down, think things through and come up with the best available solutions. There is a system of government in place with laws and a hierarchy.

5)      The legislature handles the creation of laws.  There was over a year's time for the legislature to debate, discuss, and vote on any legislation needed to address vaccinations. If the Mayor felt the need for legislation, there was more than enough time for him to request a plan from the legislative body of the CITY or the State of New York.

6)      Instead, the Mayor waited to the last minute, and then tried to justify his NYC vaccine mandates by turning this into an emergency.  The Supreme Court seemed to have felt the same about the President and his attempt to bypass legislation by shoving a vaccine mandate through OSHA.

7)      The NYC vaccine mandates are not legal, as the required authority from New York State Law does not exist. On the contrary, it clearly states that there should not be adult vaccine mandates.

8)      The NYC vaccine mandates are not justified, as the excuse is public safety and health.  The vaccines are not really vaccines, but more like a flu shot.

They use the caselaw on small pox to justify taking away people's rights to decide their own medical decisions, but small pox was very different. Small pox was very deadly to a point of about a quarter of the people died. Covid, while a real problem did not come close.

9) Additionally, the vaccine for small pox was a real vaccine. People who took that vaccine could not get small pox and could not transmit it to others, and eventually it eradicated the disease. The Covid shots do not stop anyone from getting or transmitting Covid. There is no public health issue. If I don't get the shot, or if I do, either way I can still get Covid and transmit it. The CITY's forced vaccinations only help each individual, rather than the public. I am entitled to make my own medical decisions.

10) The entire drive for forced vaccinations was entirely political. The leaders of the Democratic Party, including the current President and Vice President, initially said they will not take the vaccine, because they don't trust President Trump. Then they came into power and they changed direction. Now, if you don't take it, you want to kill everyone.

11) The most ridiculous aspect of all this and proof that it is not about public health, is this unprecedented disregard for natural immunity. People are considered safe to the public if they get a less effective vaccine, only approved by W.H.O. which allows just a 50% efficacy rate, but if they already have Covid and

are seriously immune to a point where the CDC says Covid reinfection is rare, that is insufficient. They must still get a vaccine. Why?! For what benefit?! We have never done anything like this in the history of the world.

12) Mandates need to be tailored to the needs specifically and carefully, and not just force an additional several million people with natural immunity into a vaccine mandate, that have no need for it.

13) That makes the entire mandate arbitrary and capricious, and certainly where it effects people with natural immunity. Executive Orders are not the same as in a monarchy. We are a country of laws, and there are powers that the executives have, and there are powers that they do not have. Executive Orders that are arbitrary and capricious are not valid and they're unlawful.

14) Additionally, in many cases, it would be appropriate to award monetary damages, such as in Tanzin v. Tanvir, 141 S.Ct. 486 (U.S., 2020) where the Supreme Court unanimously confirmed that "litigants, when appropriate, [can] (to) obtain money damages against federal officials in their individual capacities." Although the statute there is a bit different, the concepts remain the same. If the Executive Orders are arbitrary and capricious, and unlawful, Plaintiff should be entitled to damages in addition to declaratory and injunctive relief.

15)     Requiring this Plaintiff to stay home, not allowing him to work or to go into most indoor establishments is a form of false imprisonment. People on house arrest have more access to the benefits of the City than Plaintiff.

16)     The vaccines and their capabilities were surrounded by constant lies and propaganda. These vaccines never had full approval. There must be informed consent before administering and/or forcing medical procedures that don't have FDA full approval.

17)     If you look carefully at the entire process, you will see the Mayor and the Health Commissioner exceeded their power and forced quasi-legislation without running it through the proper channels. The mandates themselves with respect to those with natural immunity are arbitrary and capricious, and this court must declare these mandates to be illegal and to stop immediately.

## VII.     THE ARGUMENTS

### A. INTRODUCTION TO ARGUMENTS

1)     On July 15, 2022 the district court dismissed my case with prejudice (Doc. 34), saying "For substantially the same reasons reviewed in /the Court's opinion denying Abadi's motion for a preliminary injunction, see Dkt. 24 the Court grants the City's motion to dismiss Abadi's claims, with prejudice."  Being that the

judge wrote a 23-page order, I would like to unpack it a bit before responding with my arguments.

2)      The basis of the decision is laid out in that earlier order dated February 4, 2022. In the following paragraphs I will respond to that court order from the district court, of which the final order of dismissal with prejudice of July 15, 2022 is based.  Much of that order refers to the emergency preliminary injunction, which has a different standard of dismissal than a complaint. A court cannot dismiss a complaint because it does not reach the necessary requirements for a preliminary injunction. A complaint is separate and a preliminary injunction is separate. I will focus on the decisions and opinions in that order that are not exclusive to the preliminary injunction. I assume that when the judge dismissed this complaint and referred to this order of February 4, 2022, he was referring to the specific decisions and opinions that would not be exclusive to a preliminary injunction.

3)      The District Judge wrote as follows: "More than a century ago, the Supreme Court recognized that "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." Jacobson v. Massachusetts, 197 U.S. 11, 27 (1905). Accordingly, it held that government action that "purports to. . . protect the public health" from such an epidemic will be upheld unless it "has no real or substantial relation" to the object of public health or

is "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." Id at 31.

4)      The two executive orders at issue here-both of which have been repeatedly upheld, either in their current form or in sister Executive Orders-plainly relate to public health objectives. And Abadi has not shown that either works a "plain, palpable invasion" of his rights, constitutional or otherwise. He is not entitled to emergency relief."

5)      There are two main points that I see here and in several other parts of that order. First, that the City of New York should be entitled to make mandates to protect the public health. Second, that multiple cases where Plaintiffs requested emergency relief were denied by courts in the circuit, and therefore Plaintiff's arguments are without merit. I will address these two issues below.

6)      The next issue raised in that February 4th order is that my equal protection claim does not show a likelihood of success for the reasons described. The judge did not say that I have no case, just that since he believes there is a low likelihood of success, he would not grant a motion for preliminary injunction on such a claim. When it comes to the complaint, I should have the opportunity to litigate that issue.

7)      The bodily integrity claim was denied by the court because the court says that the City of New York was not mandating that I get a vaccine, rather it

was creating restrictions for people who are unvaccinated. He also pointed out as before that as per Jacobson v. Massachusetts, the City of New York is entitled to require vaccinations from everyone. I will address these points in the arguments below.

8)      The false imprisonment claim was denied in the motion because the judge held that it was not likely to succeed on the merits, because "Abadi's conception of imprisonment, however, is not supported by the caselaw, which requires confinement, not merely the placing of conditions on a person's right to enter certain establishments." I think that using the term "certain establishments" does not fit the situation at hand. If you read the three vaccine mandates, you will see that I cannot work anywhere and I could not enter almost any indoor establishment. I will address this in the arguments below.

9)      The remainder of that order was exclusively directed toward a motion for preliminary injunction and was not a reason for dismissing the case. While the Defendant filed an extensive motion to dismiss (Docs 25-27), the Plaintiff responded thoroughly to those claims (Doc. 21).  Plaintiff believes that the case should have been litigated and not summarily thrown out without an opportunity to argue his case.  There are certain pieces of information that would come out in discovery, that Plaintiff was not given the opportunity for.

## B. WHY THE "TO PROTECT THE PUBLIC HEALTH" JUSTIFICATION FAILS

10)     The only possible justification that any City health department can wield such power is based on caselaw regarding small pox from the early 1900's. That was based on an actual vaccine, not something less successful than the average flu shot.  Even the flu shot is not referred to as a vaccine.  The small pox vaccine obliterated the disease.  This Covid so-called vaccine was never expected to do that.  And even after the city knew that the so-called vaccine was barely doing much, they still instated and maintained these aggressive mandates. The percentages of deaths in the previous pandemics were much higher than with Covid 19, and the ability to treat patients in the previous pandemics were minimal at best.

11)     The Court stated in Jacobson that a public health initiative to control disease is constitutionally permissible only if the powers exercised conform with principles of fairness and necessity, i.e., comply with the statutes. Under Jacobson's legacy, the legitimacy of the licensed vaccination may not go "beyond what was reasonably required for the safety of the public." Jacobson, 197. U.S. 11, at 28. "There must exist a reasonable relationship between the legislation and the achievement of a public health objective. Id. at 26."

12)      The justification of a real vaccine being forced on people only makes sense in cases like small pox, measles, or polio.  These were real vaccines that once given out to everyone who did not get the disease, the disease was obliterated. The history shows that.  No one ever would suggest that the City can mandate flu shots.  They are not vaccines. The same is with the Covid shot. It is hard to say if it works at all.  Assuming it actually works, it does not obliterate the disease, because it does not protect people from getting Covid, they just say that it makes the symptoms less, which is unprovable. If it doesn't stop the disease, what public health issue am I resolving by taking the vaccine?

13)      The initial lies presented by the vaccine pushers was that this vaccine will protect you and you will not get Covid.  That turned out to be a lie. The public health justification is that if I take the Covid shot, then I will help protect others from getting Covid.  It was for the protection of the public. If however, it was just to protect each individual person who takes the shot, then the City would not have such authority. The true facts turned out that millions of people who got vaccinated multiple times, still got Covid.

14)      Because of that, the political movements behind the vaccine religion changed the sales pitch to suggest that if you get the shot, you will have a lighter case of Covid, although I have not seen any real evidence of that. Suddenly, there

was no public health benefit, but rather a suggested benefit for individual health only. How does that justify the City of New York to force vaccinations?!

## C. <u>MANDATES NEED TO BE TAILORED SPECIFICALLY</u>

15)     Mandates need to be tailored specifically. "The requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation, and <u>the means chosen are not substantially broader than necessary to achieve that interest</u>." Ward v. Rock Against Racism, 491 U.S. 781, 782–83, 109 S. Ct. 2746, 2749, 105 L. Ed. 2d 661 (1989).

16)     See Landell v. Sorrell, "To uphold a content-based restriction on speech, the government must prove the existence of a compelling state interest to support the restriction, and that the restriction is narrowly tailored to advance that interest." Landell v. Sorrell, 382 F.3d 91, 110 (2d Cir. 2004), rev'd and remanded sub nom. Randall v. Sorrell, 548 U.S. 230, 126 S. Ct. 2479, 165 L. Ed. 2d 482 (2006).

17)     In United States v. Playboy Ent. Grp., Inc. it says, "It must be narrowly tailored to promote a compelling Government interest, and if a less restrictive alternative would serve the Government's purpose, the legislature must

use that alternative.  United States v. Playboy Ent. Grp., Inc., 529 U.S. 803, 804,

120 Supreme Court 1878, 1881, 146 L. Ed. 2d 865 (2000)

18)     If the mandate was within the City's right to enforce, it would have to

be very specific and not this extremely broad set of restrictions that makes it the

irrational mandate that it is.  Including in the mandate people that already have

better immunity, making up at least 25% of the people, is not specifically tailored.


**D. <u>VACCINES ALLOWED ARE ANY VACCINES APPROVED BY THE</u>**

   **<u>FDA OR THE WHO</u>**

19)     The executive orders describe what would be considered a valid

vaccine as follows:  "Proof of vaccination" means proof of receipt of at least one

dose of a COVID-19 vaccine authorized for emergency use or licensed for use by

the U.S. Food and Drug Administration ("FDA") or <u>authorized for emergency use</u>

<u>by the World Health Organization</u> ("WHO")."

20)     The NYC Vaccine mandates permit any vaccine on the list that is

approved by the WHO. The bar was not set very high. Take for example the

Janssen Ad26.COV2.S (COVID-19) vaccine.  This was approved by the WHO, as

described in the amended complaint. This vaccine's efficacy goes down to 50%

after just two months. As the report from the WHO website attests to,

"Furthermore, in the single dose trial the efficacy against symptomatic disease two months after vaccination had fallen to about 50%."

21)     The Sinopharm vaccine was approved by the WHO.  The vaccine report from the WHO shows a 50% efficacy. That report says, "Data from Peru in a large cohort of health workers suggest a vaccine effectiveness of 50%."

22)     The CanSinoBIO Ad5-nCoV-S [recombinant] vaccine (Convidecia™) was approved by the WHO, and therefore it would be a sufficient vaccination for the NYC Vaccine Mandates. The efficacy rates on the report from the WHO is about 53%.

23)     There are many more and probably some with lower efficacy rates. Natural immunity most certainly has a higher efficacy rate than 50%.  The CDC writes that "reinfection with Covid is rare." Rare cannot mean up to 50%.  Rare means a very low percentage. The City of New York knows this and knew this information all along.  There was no question that people with natural immunity have better immunity than many if not all approved vaccines.

E.  **CDC SAYS REINFECTION WITH COVID IS RARE, YET BREAKTHROUGH INFECTIONS ARE COMMON, SHOWING THAT NATURAL IMMUNITY IS STRONGER**

24) The CDC says on their website that "COVID REINFECTION REMAINS RARE." id

25) On the other hand, the CDC says on their website that "VACCINE BREAKTHROUGH INFECTION ARE EXPECTED" id. It would seem from their own statements that they too agree that natural immunity is stronger.

26) The City of New York likes to claim it follows the guidance of the CDC, but, I guess, not when it does not coincide with their objectives. The CDC posted a study titled Science Brief: SARS-CoV-2 Infection-induced and Vaccine-induced Immunity, showing natural immunity to be in excess of 60%, much higher than the WHO vaccines. The same study is available at NIH at

https://www.ncbi.nlm.nih.gov/books/NBK575088/

## F. NEVER IN HISTORY DID WE GIVE VACCINES TO THOSE WITH NATURAL IMMUNITY

27) With regards to measles, we all know that natural immunity is more than enough, and no one suggests that those that had measles should also get the vaccine. "People can become immune to measles in two ways. Natural immunity: those who got sick with measles earlier in life will be immune afterward, and they won't get it again. Vaccine-based immunity: 97/100 people who have been

vaccinated with 2 doses of measles vaccine have long-term immunity to measles."
San Francisco Department of Health. (link: https://www.sfcdcp.org/infectious-
diseases-a-to-z/measles/)

    28)    The CDC describes natural immunity as follows:

https://www.cdc.gov/vaccines/vac-gen/immunity-types.htm


"**Active Immunity**

Active Immunity results when exposure to a disease organism triggers the immune
system to produce antibodies to that disease. Active immunity can be acquired
through natural immunity or vaccine-induced immunity.


Natural immunity is acquired from exposure to the disease organism through
infection with the actual disease.

Vaccine-induced immunity is acquired through the introduction of a killed or
weakened form of the disease organism through vaccination.


Either way, if an immune person comes into contact with that disease in the future,
their immune system will recognize it and immediately produce the antibodies
needed to fight it. Active immunity is long-lasting, and sometimes life-long."

29)     Prior to Covid there was never any suggestion or concept that someone with natural immunity should get vaccinated.  It was unheard of.

30)     Suddenly a new concept was born, but not from data or science. The initial evidence would show that the politics created this new necessity, and the City of New York are on that same team as those pushing this unheard of and unnecessary requirement.  I will elaborate a bit further.

### G. CITY'S MOTIVATION IS POLITICAL, NOT HEALTH BASED.

31)     Upon proper discovery, which should have been the Plaintiff's right, evidence will be clear that the City of New York's motivation for vaccinating those with natural immunity, is purely political.

32)     If you can remember, initially it was the democrats that came out against the vaccine, when President Donald Trump was in office.  The naysayers included current president and vice president. Then the Democrats took office and suddenly the science changed.   https://gop.com/research/democrats-repeatedly-undermined-the-vaccine/

33)     An investigative report by Jennifer Block freelance journalist posted on the National Institute of Health ("NIH") website and on the BMJ medical journal, brings attention to some of the political motivations behind not accepting

natural immunity at its value in the Covid political environment. She writes the following:

"**Politics of natural immunity:**

Early in the pandemic, the question of natural immunity was on the mind of Ezekiel Emanuel, a bioethicist at the University of Pennsylvania and senior fellow at the liberal think tank Center for American Progress, who later became a covid adviser to President Biden. He emailed Fauci before dawn on 4 March 2020.

Within a few hours, Fauci wrote back: "you would assume that their [sic] would be substantial immunity post infection." That was before natural immunity started to be promoted by Republic politicians. In May 2020, Kentucky senator and physician Rand Paul asserted that since he already had the virus, he didn't need to wear a mask. He has been the most vocal since, arguing that his immunity exempted him from vaccination.

Wisconsin senator Ron Johnson and Kentucky representative Thomas Massie have also spoken out. And then there was President Trump, who tweeted last October that his recovery from covid-19 rendered him "immune" (which Twitter labelled "misleading and potentially harmful information").

Another polarising factor may have been the Great Barrington declaration of October 2020, which argued for a less restrictive pandemic strategy that would help build herd immunity through natural infections in people at minimal risk. The John Snow memorandum, written in response (with signatories including Rochelle Walensky, who went on to head the CDC), stated "there is no evidence for lasting protective immunity to SARS-CoV-2 following natural infection." That statement has a footnote to a study of people who had recovered from covid-19, showing that blood antibody levels wane over time.

More recently, the CDC made headlines with an observational study aiming to characterise the protection a vaccine might give to people with past infections. Comparing 246 Kentuckians who had subsequent reinfections with 492 controls who had not, the CDC concluded that those who were unvaccinated had more than twice the odds of reinfection. The study notes the limitation that the vaccinated are "possibly less likely to get tested. Therefore, the association of reinfection and lack of vaccination might be overestimated." In announcing the study, Walensky stated: "If you have had covid-19 before, please still get vaccinated."

"If you listen to the language of our public health officials, they talk about the vaccinated and the unvaccinated," Makary tells The BMJ. "If we want to be

scientific, we should talk about the immune and the non-immune." There's a
significant portion of the population, Makary says, who are saying, "'Hey, wait,
I've had [covid].' And they've been blown off and dismissed."

34)     I could not have said this better myself.  When the science does not
make sense any longer, then it behooves the people and the courts to look into the
actual motivations behind these unreasonable restrictions. A proper discovery
process with depositions and a trial would have uncovered much of the truth.
Allowing a motion to dismiss to be granted is just a way to cover the truth and hide
it from the people and the courts.

## H. NATURAL IMMUNITY IS ALWAYS CONSIDERED BETTER THAN VACCINE IMMUNITY

35)     As we proved earlier, natural immunity in Covid is better than at least
many of the vaccines.  Historically, natural immunity was always considered a
stronger immunity than that of a vaccine.  The Children's Hospital of Philadelphia
posted information on its website on how vaccines work verses natural immunity.
It said the following:

"It is true that natural infection almost always causes better immunity than vaccines. Whereas immunity from disease often follows a single natural infection, immunity from vaccines usually occurs only after several doses. However, the difference between vaccination and natural infection is the price paid for immunity:

The price paid for immunity after natural infection might be pneumonia from chickenpox, intellectual disability from Haemophilus influenzae type b (Hib), pneumonia from pneumococcus, birth defects from rubella, liver cancer from hepatitis B virus, or death from measles.

Immunization with vaccines, like natural infections, typically induces long-lived immunity. But unlike natural infection, immunization does not extract such a high price for immunity; that is, immunization does not cause pneumonia, intellectual disability, birth defects, cancer or death.

If you could see the world from the perspective of your immune system, you would realize that where the virus or bacteria comes from is irrelevant. Your immune system "sees" something that is foreign, attacks it, disables it and then adds information to the memory bank, so your body can react more quickly the next time that same foreign invader arrives.

The differences between a vaccine and getting the disease naturally are the dose and the known time of exposure…"

36)     That was the original information that we knew for centuries.  The politics of this crazy time suddenly changed all that.  Without any new studies or any real evidence, these political organizations began pushing this crazy idea that natural immunity is no good and everyone must get vaccinated. They used this intense fear spread by the government and its partners in the media to let emotions completely take over rational thought.

## I.  <u>FALSE IMPRISONMENT</u>

37)     I think I should be entitled to argue this concept.  I understand the district judge feels that if you are not incarcerated, then you cannot claim false imprisonment.  It is not that simple.  See Dagi v. Delta Airlines, Inc. where it says the following: "as the Supreme Court has noted, false imprisonment involves taking a person into custody: <u>"[e]very confinement of the person is an</u> <u>imprisonment, whether it be in a common prison or in a private house, or in the</u> <u>stocks, or even by forcibly detaining one in the public streets; and when a man is</u> <u>lawfully in a house, it is imprisonment to prevent him from leaving the room in</u>

which he is." Wallace v. Kato, 549 U.S. 384, 388-89, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (quoting M. Newell, Law of Malicious Prosecution, False Imprisonment, and Abuse of Legal Process § 2, p. 57 (1892)). Dagi v. Delta Airlines, Inc., 961 F.3d 22, 29 (1st Cir. 2020)

38)     The district judge was under the assumption that everything the City of New York did was within the law, and therefore could not see why there would be a possibility of false imprisonment.  However, once we can show that the City of New York violated the laws, and exceeded its authority, suddenly things can look differently.  A person who lives in New York City, but cannot go to any restaurant, gym, and hardly any indoor establishments, and who cannot have any employment, is then just locked in the house.  It sure sounds a lot like false imprisonment.  This case should not have been dismissed.  It should have been allowed to continue and then win or lose on the merits.

39)     See Shen v. Leo A. Daly Co. where the circuit court denies the false imprisonment claim, only because the person had access to the entire country of Taiwan.  I was stuck in New York with barely any access to stores and indoor establishments.  I could stay home or walk the streets; those were my options. I couldn't go anywhere.  In my case, I think false imprisonment would stand.

40)     The court said the following: "False imprisonment is "the unlawful restraint against his will of an individual's personal liberty." See Herbrick v.

Samardick & Co., 169 Neb. 833, 101 N.W.2d 488, 491 (1960). Shen's liberty was restrained in this case—he was not allowed to leave Taiwan. And, <u>as Shen correctly points out, the term false imprisonment is broader than just confinement within a jail or prison</u>. Shen's confinement, however, was to a whole country. He was free to move about Taiwan, and was not restrained in any way in his daily activities. Although it is difficult to define exactly how close the level of restraint must be, in this case the country of Taiwan is clearly too great an area within which to be falsely imprisoned. Therefore, the district court correctly granted judgment as a matter of law." Shen v. Leo A. Daly Co., 222 F.3d 472, 478 (8th Cir. 2000)

41)    The district judge was convinced that imprisonment was only incarceration.  The judge had it wrong. If the imprisonment that I experienced is worse than the typical house arrest experience, then it is likely that false imprisonment should be an appropriate claim.

42)    The following are the places that I was not permitted to go to as described in the NYC Vaccine Mandates:  I cannot go to… "movie theaters, music or concert venues, adult entertainment, casinos, botanical gardens, commercial event and party venues, museums and galleries, aquariums, zoos, professional sports arenas and indoor stadiums, convention centers and exhibition halls, performing arts theaters, bowling alleys, arcades, indoor play areas, pool and

billiard halls, and other recreational game centers, Indoor Food Services, including

indoor portions of food service establishments offering food and drink, including

all indoor dining areas of food service establishments that receive letter grades as

described in section 81.51 of the Health Code; businesses operating indoor seating

areas of food courts; catering food service establishments that provide food indoors

on its premises; and any indoor portions of food service establishment that is

regulated by the New York State Department of Agriculture and Markets offering

food for on-premises indoor consumption, Indoor Gyms and Fitness Settings,

including indoor portions of standalone and hotel gyms and fitness centers, gyms

and fitness centers in higher education institutions, yoga/Pilates/barre/dance

studios, boxing/kickboxing gyms, fitness boot camps, indoor pools, CrossFit or

other plyometric boxes, and other facilities used for conducting group fitness

classes."

43)     This list is in the Executive Order.  It might have been shorter if they

listed the places that I am permitted to go into.  Prisoners in actual prisons often

have access to more than I had access to.  According to New York Penal Law

§135, false imprisonment occurs when an individual unlawfully restrains a person's

movement without their consent in a way that restricts their freedom or prevents

them from leaving.

44)     The direct result of the vaccine requirements to all the listed public accommodations, limits the Appellant from being able to go out to any of so many places, to a point that his movements are severely limited.  There are tens of thousands of locations that fall under the indoor public venue mandate alone.

45)     In CITY OF CHICAGO v. MORALES et al. United States Supreme Court (1999), it states the following:  We have expressly identified this "right to remove from one place to another according to inclination" as "an attribute of personal liberty" protected by the Constitution. Williams v. Fears, 179 U. S. 270, 274 (1900); see also Papachristou v. Jacksonville, 405 U. S. 156, 164 (1972).[20] 54*54 Indeed, it is apparent that an individual's decision to remain in a public place of his choice is as much a part of his liberty as the freedom of movement inside frontiers that is "a part of our heritage" Kent v. Dulles, 357 U. S. 116, 126 (1958), or the right to move "to whatsoever place one's own inclination may direct" identified in Blackstone's Commentaries. 1 W. Blackstone, Commentaries on the Laws of England 130 (1765).

46)     Taking away that freedom, is both a violation of the Appellant's liberties, and a form of false imprisonment.


## J.  THE MRNA SHOTS ARE NOT VACCINES

47)     The mRNA shots being forced on the Plaintiff do not meet the requirements to be "vaccines." The mRNA shots do not "contain" a single molecule of the COVID-19 virus; they are not the same as COVID-19 and therefore the mRNA shots are not vaccines. The mRNA treatments also fail to satisfy the FDA and CDC definitions. In recognition of this fact, the CDC recently had to radically change the definition of "vaccine" to eliminate the word "immunity" to encompass these treatments. Initially, FDA considered mRNA products as gene therapies. Other jurisdictions still treat mRNA products as gene therapies, as acknowledged by Moderna and BioNTech SEC filings. (see https://www.sec.gov/Archives/edgar/data/1682852/000168285220000017/mrna-20200630.htm  & https://investors.biontech.de/node/7381/html  respectively).

48)     These gene therapy products are not "vaccines" because they do not provide immunity, nor do they prevent infection or transmission, as the FDA and other public health agencies acknowledge. The limited protection they do provide wanes rapidly over time, and Pfizer's CEO has acknowledged that the mandated two-dose regimen offers "very limited protection, if any, against the Omicron variant."

49)     The premise for the unique constitutional treatment of vaccines—and vaccine mandates— is that they actually stop the spread of the disease and can even (potentially) eradicate the disease, as has been the case with smallpox or polio

vaccine. There is no dispute that these gene therapy products do not prevent

infection or transmission, and thus fail this test. Instead, the mRNA shots provide

only "protection from the worst effects" of COVID-19. In other words, they are a

treatment that mitigates the severity of an infection but cannot prevent it. The

justification of Jacobson is not applicable to such a treatment.

50)     See Lukaszczyk v. Cook Cnty., "…smallpox pandemic, which was of

a different nature than the COVID-19 pandemic of the last few years. For example,

as Judge Blakey found in Halgren, the <u>smallpox fatality rate among the</u>

<u>unvaccinated was about 26 percent; by contrast, the COVID-19 infection fatality</u>

<u>rate was estimated in January 2021 to be somewhere between 0.0–1.63 percent.</u>

Frank Fenner et al., Smallpox and its Eradication, WORLD HEALTH

ORGANIZATION (1988); John P.A. Ioannidis, Infection fatality rate of COVID-

19 inferred from seroprevalence data, WORLD HEALTH ORGANIZATION

BULLETIN (Oct. 14, 2020) (stating that COVID-19 "[i]nfection fatality rates

ranged from 0.00% to 1.63%" with "corrected values from 0.00% to 1.54%" and in

"people younger than 70 years, infection fatality rates ranged from 0.00% to 0.31%

with crude and corrected medians of 0.05%")." Lukaszczyk v. Cook Cnty., 47

F.4th 587 (7th Cir. 2022)

51)     And it continues as follows: "In Halgren the district court also found

that COVID-19 has "a low attack rate" in contrast to the smallpox pandemic.

Grace E. Patterson et al., Societal Impacts of Pandemics: Comparing COVID-19 With History to Focus Our Response, FRONTIERS IN PUBLIC HEALTH (Apr. 21, 2021).

52)     Judge Blakey further concluded that the vaccines for smallpox and COVID-19 are distinguishable—the smallpox vaccine was a sterilizing vaccine, intended to kill the virus and prevent transmission, but many of the COVID-19 vaccines are, by design, non-sterilizing. James Myhre and Dennis Sifris, MD, Sterilizing Immunity and COVID-19 Vaccines, VERYWELL HEALTH (Dec. 24, 2020)." ibid

## K. THE GOVERNMENT CANNOT FORCE MEDICAL DECISIONS & PROCEDURES

53)     One of the most fundamental principles of Anglo-American law is the right to bodily autonomy and informed consent. It is arguably the oldest and most cherished right that there is— the inviolability of the individual—and predates the Constitution itself.

54)     "At common law, even the touching of one person by another without consent and without legal justification was a battery. Before the turn of the century, this Court observed that [n]o right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others,

unless by clear and unquestionable authority of law. This notion of bodily integrity has been embodied in the requirement that informed consent is generally required for medical treatment. … Every human being of adult years and sound mind has a right to determine what shall be done with his own body; and a surgeon who performs an operation without his patient's consent commits an assault, for which he is liable in damages. The informed consent doctrine has become firmly entrenched in American tort law." Cruzan v. Director, Mo. Dept. of Health, 497 U.S. 261, 269 (1990) ("Cruzan")(citations and quotation marks omitted) (emphasis added).

55) This interest also includes the concomitant right to refuse a particular treatment or drug: "[t]he logical corollary of the doctrine of informed consent is that the patient generally possesses the right not to consent, that is, to refuse treatment." Cruzan, 497 U.S. at 270 (emphasis added). The Cruzan decision concludes that "[t]he principle that a competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment may be inferred from our prior decisions." The Court subsequently confirmed that the right to "bodily integrity" is a "fundamental right," and assumed that "the traditional right to refuse unwanted … medical treatment" is as well. Washington v. Glucksberg, 521 U.S. 702, 720, 117 S.Ct. 2258 (1997) (citations omitted).

56)     When the public health excuse is invalid, as in this case, these

constitutional rights remain.  The City of New York violated my rights.


## L. <u>FORCING DRUGS THAT ARE UNAPPROVED OR JUST EMERGENCY AUTHORIZATIONS</u>

57)     The Emergency Use Authorization ("EUA") statute, 21 U.S.C. §

360bbb-3(e)(1)(A)(ii), explicitly states that recipients of products approved for use

under it must be informed of the "option to accept or refuse administration," and of

the "significant known and potential benefits and risks of such use, and of the

extent to which such benefits and risks are unknown."

58)     Why would the City of New York force a vaccine that is only

authorized for emergency use on someone who already has natural immunity?!


## M. <u>THE ABSURDITY OF SAYING THAT THE NYC VACCINE MANDATES DID NOT FORCE THE VACCINES</u>

59)     The District Judge quotes Klaassen, 7 F.4th at 593 ("Indiana does not

require every adult member of the public to be vaccinated, as Massachusetts did in

Jacobson . ... People who do not want to be vaccinated may go elsewhere" than

Indiana University)."

60)     The difference is that Indiana University is one university. There are thousands of others.  The NYC Vaccine Mandates would thus force me to leave my home and my city and find another place to live.  That's unconstitutional.

61)     The idea that the judge brings from those other cases, are all cases with somewhat limited coercion.  It may be in one case the person's job is at risk, and in another case the person's college. In New York City, if you will not get vaccinated, they take away your ability to work and your ability to go anywhere. You can stay home and rot. If that isn't forcing the vaccine, then nothing is.

## N. <u>AS PER NEW YORK STATE LAW, THE NYC VACCINE MANDATES ARE ILLEGAL</u>

62)     NYC's own Health Code requires a Court Order be obtained by the Board of Health from a magistrate to impose any mandatory drug involuntarily within the City of New York, affording the same due process protections as the state law Public Health Law - PBH § 2120, Judicial Order of Quarantine. 24 RCNY §11.23.

## <u>PREEMPTION</u>

63)     The NYC Vaccine Mandates Are Void Since It  Violates The Separation Of Powers And Informed Consent Doctrines.

64)     EUA Covid 19 Countermeasure, adult-vaccination-mandates are preempted by state and federal law from being mandated in NYS. The preemption doctrine is most often applied where inferior levels of government have attempted to regulate despite pronouncements on the same subject at a higher governmental level. See, e.g., New York State Club Assn. v City of New York, 69 N.Y.2d 211; Consolidated Edison Co. v Town of Red Hook, 60 N.Y.2d 99; Monroe-Livingston Sanitary Landfill v Town of Caledonia, 51 N.Y.2d 679). see also Boreali v. Axelrod, 71 N.Y.2d 1, 14-15 (N.Y. 1987).

65)     See Garcia v. N.Y.C. Dep't of Health & Mental Hygiene, 31 N.Y.3d 601 (2018) In Garcia, the NYS Court of Appeals identified two (2) provisions of state's public health law explaining that PHL §206(1)(l) and PHL §613 preempt adult vaccination mandates in NYS. Garcia, 31 N.Y.3d 601, at 619, 620. "A local law will be preempted either where there is a direct conflict with a state statute (conflict preemption) or where the legislature has indicated its intent to occupy the particular field (field preemption)." There were no questions "left open" by the Court of Appeals with respect to adult mandates in NYS that are prohibited by law.

### Conflict Preemption

66)     New York PHL §206(1)(l), Commissioner: general duties and responsibilities states, in relevant part: "establish and operate such adult and child

immunization programs as are necessary to prevent or minimize the spread of disease and to protect the public health…<u>Nothing in this paragraph shall authorize mandatory immunization of adults or children</u>, except as provided in sections twenty-one hundred sixty-four and twenty-one hundred sixty-five of this chapter." Garcia at 840, 841.

67)     NYS PHL §613 (c), State aid: immunizations, similarly states, in relevant part: "The commissioner shall invite and encourage the active assistance and cooperation in such education activities of: the medical societies, organizations of other licensed health personnel, hospitals, corporations subject to article forty-three of the insurance law, trade unions, trade associations, parents and teachers and their associations, organizations of child care resource and referral agencies, the media of mass communication, and such other voluntary groups and organizations of citizens as he or she shall deem appropriate...<u>Nothing in this subdivision shall authorize mandatory immunization of adults or children</u>, except as provided in sections twenty-one hundred sixty-four and twenty-one hundred sixty-five of this chapter." Id.

68)     The Garcia Court held:

69)     "The legislature intended to grant NYSDOH authority to oversee and encourage voluntary adult immunization programs, while ensuring that its grant of

authority would not be construed as extending to the adoption of mandatory adult immunizations."  Garcia, 31 N.Y.3d 601 at 842.

70)    The legislature has not authorized adult mandates in NYS. The NYC Vaccine Mandates are violating the Separation of Powers and Informed Consent Doctrines.

**Field Preemption.**

71)    On January 1, 2021, the NYS Legislature enacted PHL §2180–§2182, Novel Coronavirus Covid 19 Legislation, restricting available Covid 19 Countermeasures in NYS as limited to "contact tracing" only. (App. 47, 93). The Novel legislation reads as follows: §2180. "Definitions. As used in this title the following terms shall have the following meanings: 1. "Contact tracing" means Covid 19 case investigation and identification of case individuals and contact individuals.

72)    In January of 2021, when the NY Legislature enacted §2180-§2182, the law preempted an EUA Covid 19 vaccination as part of the allowable countermeasures because EUA drugs may not be mandated on adults or children under state and federal law. See; PHL §206(1)(l), PHL §613, PHL §2120(3), 24 RCNY §11.23; PHL §2442, PHL §2180-§2182; 21 U.S.C. §360bbb-

3(e)(1)(A)(ii)(I-III) (SDNY ECF #35). Also see Garcia v. N.Y.C. Dep't of Health & Mental Hygiene, 31 N.Y.3d 601 (2018).

73) As discussed in Vatore v. Comm'r of Consumer Affairs of City of New York, "Where the State has preempted an entire field, a local law regulating the same subject matter is inconsistent with the State's interests if it either (1) prohibits conduct which the State law accepts or at least does not specifically proscribe (see, New York State Club Assn. v. City of New York, 69 N.Y.2d 211, 221, affd. 487 U.S. 1, 108 S.Ct. 2225, 101 L.Ed.2d 1; Monroe- Livingston Sanitary Landfill v. Town of Caledonia, 51 N.Y.2d 679, 683), or (2) imposes restrictions beyond those imposed by the State law (see, Robin v. Incorporated Vil. of Hempstead, 30 N.Y.2d 347, 350-352)." See Vatore v. Consumer Affairs, 83 N.Y.2d 645, 649 (N.Y. 1994). The State's intention to preempt an entire field need not be specified in a law as "Preemptive intent, however, may be inferred from the nature of the subject matter being regulated and the purpose and scope of the State legislative scheme. (See, Albany Area Bldrs. Assn. v. Town of Guilderland, 74 N.Y.2d 372, 377; Consolidated Edison Co. v. Town of Red Hook, 60 N.Y.2d 99, 105)." Id.

74) Where such preemptive intent exists, the locality may not legislate "unless it has received 'clear and explicit' authority to the contrary (Robin v Incorporated Vil. of Hempstead., 30 N.Y.2d 347, 350-351 (1972); Matter of Kress

Co. v Department of Health of City of N.Y., 283 N.Y. 55, 60 (1940) (State's Agriculture and Markets Law's regulation of the manufacture and sale of frozen desserts held pre-emptive)." People v. De Jesus, 54 N.Y.2d 465, 469 (N.Y. 1981).

75)    State laws preempt EUA Covid 19 adult-vaccination- mandates in NYS, and this applies equally to the Mayor of New York City and to NYC's Board of Health and cannot be such that it restricts adult vaccinations mandates without informed consent, but at the same time permits the City by fiat to impose adult vaccinations mandates on municipal employees. (App. 41 to 48, 94, 107, 129 to 132). And "[v]iewed in that light, the agency's actions were a far cry from the 'interstitial' rule making that typifies administrative regulatory activity." Boreali v. Axelrod, 71 N.Y.2d 1, at 13.

**Federal Preemption**

76)    In deciding whether federal law preempts state law, a court must (1) assess the comprehensive nature of the federal regulatory scheme; (2) determine if there is a dominant federal interest in the matter to be regulated and if there is a need for national uniformity; and (3) analyze the threat of conflict between state laws and the effective administration of the state program. Bravman v. Baxter Healthcare Corp., 842 F. Supp. 747, 750 (S.D.N.Y. 1994) (Sweet, J.) and Pennsylvania v. Nelson, 350 U.S. 497 (1956).

77) Supremacy clause analysis begins with the "assumption that the historic police powers of the States [are] not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947).

78) Title 21, U.S.C. §360 bbb-3(e)(1)(ii)(I-III), Food, Drug and Cosmetic Act; Emergency Use Authorizations (EUA) is a comprehensive, complex, well-developed, regulatory scheme that preempts mandating EUA drugs (USCA ECF #35). In John Doe #1 v. Rumsfeld, the Department of Defense (DoD) attempted to mandate an EUA Anthrax vaccine among service members despite its EUA status. A district court halted the mandate citing its lack of legislative authority and application to all persons being "illegal absent informed consent": "The Court is persuaded that the right to bodily integrity and the importance of complying with legal requirements, even in the face of requirements that may potentially be inconvenient or burdensome, are among the highest public policy concerns one could articulate…Absent a 32 informed consent or presidential waiver, the United States cannot demand that members of the armed forces also serve as guinea pigs for experimental drugs." John Doe #1 v. Rumsfeld, 297 F.Supp.2d 119 (D.D.C.2003)

79) In addition, the NYC Vaccine Mandates are preempted in NYS under state law. See PHL §206(1)(l), PHL §613, PHL §2180-§2182, also Garcia v.

N.Y.C. Dep't of Health & Mental Hygiene, 31 N.Y.3d 601, 617 (N.Y. 2018).

Based on preemption, Appellant, respectfully, seeks a ruling the NYC Vaccine

Mandates violate the Separation of Powers Doctrine and Informed Consent

Doctrines.

## O. THE NYC VACCINE MANDATES ARE ARBITRARY AND CAPRICIOUS

80)     The NYC Vaccine Mandates are clearly arbitrary and capricious

because a basketball player or theatre performer recently excused from the

vaccination by the Mayor, is no less or no greater a risk than any other person in

New York City.

81)     The NYC Vaccine Mandates are arbitrary and capricious because they

are including some individuals while arbitrarily excluding others, without a

rational basis.

82)     The Fifth Circuit recently reaffirmed a Stay, barring OSHA from

enforcing the November 5, 2021, Emergency Temporary Standard (the "Mandate")

requiring employees of covered employers to undergo Covid 19 vaccination or

take weekly Covid 19 tests and wear a mask. See BST Holdings, L.L.C. v. OSHA,

17 F.4th 604, No. 21-60845, 2021 U.S. App. LEXIS 33698 (5th Cir. Nov. 12,

2021). Under-inclusiveness is one of the reasons underpinning the Fifth Circuit's

Stay in BST Holdings of the OSHA Mandate, because "…this kind of thinking belies the premise that any of this is truly an emergency.  This STAY was eventually upheld by the Supreme Court.

83)    Indeed, under-inclusiveness of this sort is often regarded as a telltale sign that the government's interest in enacting a liberty-restraining pronouncement is not in fact 'compelling'…The underinclusive nature of the Mandate implies that the Mandate's true purpose is not to enhance workplace safety, but instead to ramp up vaccine uptake by any means necessary." See BST Holdings, L.L.C., 17 F4th 604, at *20.

84)    The goal "to ramp up vaccine uptake by any means necessary" is not merely an inference. Mayor de Blasio stated as much in media appearances around the mandate.

85)    The NYC Vaccine Mandates are arbitrary and capricious violating due process. Under applicable Public Health Laws and NYC Health Code, any person subject to an involuntary, unlicensed drug (EUA vaccine) is entitled to refuse an unauthorized medical intervention and is entitled to a due process hearing under PHL §2120 (3), and 24 RCNY §11.23, when informed consent is withheld. The failure to provide any New Yorker with a due process hearing is arbitrary and capricious, and thus, the NYC Vaccine Mandates should be struck down as causing irreparable harm to all NYC employees affected by the mandate.

86)     Further, the Covid 19 "emergency" is over. Covid 19 is now another "ongoing" health concern. New York City is no longer experiencing the widespread crisis that marked the spring of 2020, attributed mostly to controversy over a spike in nursing home deaths. In retrospect, the City of New York and the State of New York could have done a better job and avoided much of those deaths. Instead, they focused on the politics of it.

## P. <u>THE VACCINE WAS MOSTLY A LIE TO BEGIN WITH.</u>

87)     THE DATA WAS OUT, BUT THE CITY DIDN'T CARE.  THEY STILL HAVE YET TO CANCEL ALL THE MANDATES.

88)     As early as October 2020, when the vaccines were almost ready, a BMJ (The BMJ is a weekly peer-reviewed medical trade journal, published by the trade union the British Medical Association) associate editor, Peter Doshi, wrote the following:

89)     "None of the current trials are designed to detect a reduction in any serious outcome such as hospitalisations, intensive care use, or deaths.

90)     Vaccines are being hailed as the solution to the covid-19 pandemic, but the vaccine trials currently underway are not designed to tell us if they will save lives, reports Peter Doshi, Associate Editor at The BMJ today.

91)    "Several covid-19 vaccine trials are now in their most advanced (phase 3) stage, but what will it mean exactly when a vaccine is declared "effective"?

92)    Many may assume that successful phase 3 studies will mean we have a proven way of keeping people from getting very sick and dying from covid-19. And a robust way to interrupt viral transmission.

93)    Yet the current phase 3 trials are not actually set up to prove either, says Doshi.

94)    "None of the trials currently underway are designed to detect a reduction in any serious outcome such as hospitalisations, intensive care use, or deaths. Nor are the vaccines being studied to determine whether they can interrupt transmission of the virus," he writes."  The article is worth reading.

95)    The various government bodies distorted the facts in order to justify forcing vaccines, once President Trump was out of office and then the vaccine became a Democrat Party run process to force all Americans to show solidarity by getting vaccinated, whether they would benefit from it or not.

96)    "You're not going to get COVID if you have these vaccinations," President Biden said on July 21, 2021. See the Washington Examiner article (https://www.washingtonexaminer.com/opinion/biden-said-if-you-get-vaccinated-you-wont-get-covid ).

97)     The pro vaccine madness from the Democratic Party was full of lies, coercion, and brute force. There is a system of government in this republic, and they tried everything to circumvent it.  The President tried bypassing the legislature by using OSHA to force vaccines, and the Supreme Court stopped them. The Mayor of the City of New York tried bypassing the legislature and the New York State Laws by signing unlawful executive orders.

98)     Mayor Deblasio of the City of New York told very similar lies. "New York City will not give a single inch in the fight against COVID-19. Vaccination is the way out of this pandemic, and these are bold, first-in-the-nation measures to encourage New Yorkers to keep themselves and their communities safe," said Mayor Bill de Blasio. "From workplace mandates, to $100 incentives, to mobile and at-home vaccination offerings, no place in the nation has done more to end the COVID era. And if you have not taken this step yet: there's no better day than today to stand up for your city."

99)     There is no evidence that vaccination ends Covid.  To the contrary, all the evidence shows that people with Covid are still getting and transmitting Covid. Vaccination normally eradicates a disease.  These Covid shots were never supposed to be vaccinations. The entire vaccination program pushed by the City of New York was a lie.  I can show hundreds of more articles, scientific studies, and other evidence, but unfortunately my brief is limited to 13,000 words. Suffice it to

say that the vaccination program was built on multiple lies and forced on the people surreptitiously, while exceeding the power given to the City.

## Q. THE CASE LAW FROM THE COURT ORDER IS MISSING CONTEXT AND NOT THE SAME AS THIS CASE

100)  On the same exact day, the Supreme Court had oral arguments with regards to OSHA's vaccine mandate for all employees of companies with 100 employees, and the Department of Health's vaccine mandate for all medical personnel. The Supreme Court denied the first one, but upheld the second. These are totally different cases.

101)  The same issue goes for the quoted caselaw in the motion to dismiss and in the order of the court dismissing my motion for preliminary injunction. Some cases are talking about situations where the one mandating the vaccine actually had the authority, unlike here with the City of New York.  Other cases are talking about where the vaccine mandate was done by a college, and the argument was "you can go to another college." None of those cases was a scenario where an entire city, the size of a state, banned everyone from working and going into indoor establishments. I cannot go through case by case. The onus is on the City of New York and the district court judge to prove their decisions.  The caselaw that they

presented do not prove anything other than the specific circumstances of those cases.

102)   I will present a few examples, but I will not burden this court by responding to each case mentioned, as the issues are very similar in each.  The judge mentions Dixon v. DeBlasio, where judge Cogan denied the preliminary injunction. First of all, denying a preliminary injunction is not in itself a reason to deny a complaint.  There is a high bar to reach in order to have a preliminary injunction granted.  That in itself is unfair. Second, the plaintiffs in that case made only one or two arguments that were similar to mine.  They did not discuss natural immunity. They did not discuss a majority of what I presented. The judge in that case was limited to the arguments made. You can't just say "this case has a vaccine and the judge didn't like it, and your case has a vaccine, so goodbye." There's more to the legal process than that.

103)   The next two cases listed by the judge in his order had similar issues. These are Clementine Co. LLC v. DeBlasio and Commey v. Adams. They were both very limited in their arguments that were similar to mine, they did not address natural immunity, and they were exclusively decisions against a preliminary injunction.

104)   The court did not issue any details or explanations in its order to dismiss the complaint other than to say that it was based on the courts original

order dismissing the preliminary injunction.  Most of the caselaw that he brought

there were possibly reasons to justify not granting a preliminary injunction, but

otherwise should not dismiss a complaint without due process.

## VIII.        <u>CONCLUSION</u>

<u>The City of New York went to the extreme to require even a person who</u>

<u>lives alone to run a business from his own kitchen, that he must have a vaccine.</u>

<u>There is no benefit to the City, to public health, or to anything else. The only</u>

<u>benefit is to force this unsuccessful vaccine in order to promote Democratic Party</u>

<u>power. If anything is Arbitrary & Capricious, that's this.</u>

The district court erred in its decision to dismiss this case, and should have

allowed Plaintiff to litigate it with a full discovery process and trial.

**WHEREFORE**, Appellant respectfully requests from this Court to determine

that the NYC vaccine mandates are and were unlawful, and to reverse the decision

of the district court's dismissal of this case, and remand this case to be properly tried.

Respectfully submitted on October 20, 2022,

*Aaron Abadi*

AARON ABADI, Appellant
82 Nassau Street Apt 140
New York, NY 10038
Tel 516-639-4100
Email: aa@neg.com

## IX.     CERTIFICATE OF COMPLIANCE

This appellant initial brief complies with the limit of 14,000 words established by Local Rule 28.1.1 because it contains 13,749 words as measured by Microsoft Word excluding sections not counted pursuant to FRAP 32(f).

This brief does not come with any Appendix pursuant to Local Rule 30.1 (e) "Proceeding on the Original Record Without an Appendix.

(1) Authorized Classes of Cases. The procedure described in FRAP 30(f) for hearing appeals on the original record without requiring an appendix is authorized in the following classes of cases: (A) proceedings conducted in forma pauperis…"

*Aaron Abadi*

AARON ABADI, Appellant  Date October 20, 2022

## X.     CERTIFICATE OF SERVICE

I, Aaron Abadi, hereby certify that on October 20,  2022 I mailed a copy and I filed this with the Court's CM/ECF electronic filing system, which automatically sends a copy to the Appellee electronically, to the following.

Chloe K. Moon
New York City Law Department
100 Church St.
212-356-2611
cmoon@law.nyc.gov

*Aaron Abadi*

Aaron Abadi, Appellant      October 20, 2022

# ADDENDUM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AARON ABADI,

                              Plaintiff,

            -v-

CITY OF NEW YORK,

                              Defendant.

21 Civ. 8071 (PAE)

<u>ORDER</u>

PAUL A. ENGELMAYER, District Judge:

On February 4, 2022, the Court denied plaintiff Aaron Abadi's motion for a preliminary injunction against two executive orders related to COVID-19 vaccination requirements. Dkt. 24. On February 7, 2022, the defendant the City of New York (the "City") moved to dismiss Abadi's amended complaint. Dkt. 25. The same day, Abadi filed a notice of interlocutory appeal from the Court's opinion denying his request for emergency relief. Dkt. 28.

On March 9, 2022, the Court received a letter from the City arguing that the portions of Abadi's amended complaint challenging the Key to NYC program are now moot, because Mayor Eric Adams has lifted the vaccination requirements for restaurants, indoor gyms, and places of entertainment and recreation. Dkt. 30. Abadi responded, contesting the City's claim of mootness. Dkt. 31. On March 14, 2022, the Court held the motion to dismiss in abeyance pending the Circuit's resolution of Abadi's interlocutory appeal. Dkt. 32.

On July 14, 2022, the Circuit's mandate issued, denying Abadi's motions and summarily dismissing his appeal for "lack[ing] an arguable basis either in law or in fact." Dkt. 33 (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)). For substantially the same reasons reviewed in the Court's opinion denying Abadi's motion for a preliminary injunction, *see* Dkt. 24, the Court

grants the City's motion to dismiss Abadi's claims, with prejudice.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

The Clerk of the Court is directed to close the motions pending at dockets 17 and 25 and to close this case.

SO ORDERED.

Dated:    July 14, 2022
          New York, New York

*Paul A. Engelmayer*
_____
PAUL A. ENGELMAYER
United States District Judge

2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
AARON ABADI,

                              Plaintiff,

                -against-                                          21 **CIVIL** 8071 (PAE)

                                                                  ## JUDGMENT

CITY OF NEW YORK,

                              Defendant.
------------------------------------------------------------X

        It is hereby **ORDERED, ADJUDGED AND DECREED:**  That for the reasons

stated in the Court's Order dated July 15, 2022,  and for substantially the same reasons reviewed

in the Court's opinion denying Abadi's motion for a preliminary injunction, see Dkt. 24, the

Court has granted the City's motion to dismiss Abadi's claims, with prejudice. See Cuoco v.

Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); accordingly, the case is closed.

**Dated:**  New York, New York

        July 18, 2022

                                                        **RUBY J. KRAJICK**
                                          _____
                                                        **Clerk of Court**
                                          **BY:**     K. Mango
                                          _____
                                                        **Deputy Clerk**